UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                        Plaintiff

v.                                              Criminal Action No. 3:19-cr-142-RGJ

JOSE PRIETO, JR.                                               Defendants
LOUIS PRIETO

* * * * *

## MEMORANDUM OPINION & ORDER

Defendants, Jose Prieto, Jr. and Louis Prieto move this Court in separate motions to revoke their detention and order emergency release due to COVID-19 pursuant to 18 U.S.C. §3142(i). [DE 49; DE 51]. The United States responded to both motions. [DE 54; DE 56]. This matter is now ripe. For the reasons below, the Court **DENIES** Defendants' Motions.

## I.      BACKGROUND

Jose Prieto, Jr. and his son, Louis Prieto, were indicted by Grand Jury on one count of conspiracy with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 812, 841, and 846. [DE 1]. The alleged conspiracy extended from February 2016 to August 2018. *Id.* Law enforcement arrested Defendants at their residences in California. [DE 18 at 66; DE 19 at 74–75]. After their arrest, Defendants appeared before magistrate judges in separate California district courts for their initial appearances and detention hearings. *Id.*

Both California magistrate judges ordered Defendants released on bond. [DE 11, 15]. As directed in their conditions of release, Defendants appeared before a magistrate judge in the Western District of Kentucky for arraignment. [DE 16]. After their arraignment, Defendants appeared before this Court on the United States' motions to detain. [DE 13; DE 14]. A lengthy detention hearing was held. [DE 24].

1

There was a finding of probable cause which triggered the presumption of detention under § 3142(e)(3).  Defendants had an initial burden of production to overcome the presumption of detention.  Defendants met this burden through evidence of their strong ties to the community, minimal non-violent criminal history, and consistent record of timely appearing in court both here and when required in prior cases.  [DE 18 at 69–72; DE 19 at 82–85].  Thus, while the Defendants rebutted the presumption and it remained a factor supporting detention that the Court considered along with the § 3142(g) factors.  *See United States v. Dominguez*, 783 F.2d 702, 707 (7th 1986); *see also Legg*, 2000 WL 553990, at *1.

Under 18 U.S.C. §3142(g)(2), the Court considered the weight of the evidence the evidence of dangerousness.  *Stone*, 608 F.3d at 948.  Witnesses were presented asserting that Defendants are allegedly high-ranking members of a multistate drug trafficking organization ("DTO").  [Transcript of Detention Hearing, Sept. 6, 2019 ("Sept. 6, 2019 Tr."), DE 25, 220:13–18].  The United States presented evidence that this DTO is violent, and that Defendants have threatened violence to others, including government informants and potential witnesses as members of the DTO.  The United States proffered evidence and testimony about the murders of two people connected to this DTO.  [Transcript of Detention Hearing, Sept. 4, 2019 ("Sept. 4, 2019 Tr."), DE 22, 167:22–25].  The United States further proffered that one detective was shot in the head while investigating this DTO.  [Sept. 4, 2019 Tr., 167:24–168:2].  Finally, the United States proffered that Defendant's former girlfriend was terrified of Jose, and later died under mysterious circumstances, though her death was ultimately ruled a suicide.  [Sept. 4, 2019 Tr., 172:24–173:23].

While the United States did not present evidence directly tying either Defendant to these deaths, the United States proffered that Jose directed much of the violence in the DTO and his son,

2

Louis, carried out his father's orders.  [Sept. 6, 2019 Tr., 220:13–18].  The United States presented evidence of two recorded phone calls that Louis made to DTO members, during which he discussed killing a DTO affiliate because of an outstanding debt, threatened the informant on the phone call, and discussed the fact that his father was "taking people out" in Louisville.  [Sept. 4, 2019 Tr., 169:20–170:21;  176:6–7;  178:23–179:14;  180:7–15;  Gov. Ex. 1, 2].    The evidence of dangerousness was not just connected to the community at large, but also, to specific informants and potential witnesses.

After reviewing the relevant materials *de novo*, including the recordings from the two detention hearings conducted in California, the Pretrial Services Reports prepared in California for both Defendants, the Orders of Release, the parties' briefing, and conducting an evidentiary hearing and oral argument on the motions, the Court found that there are no conditions or combination of conditions to reasonably assure the safety of the community.  The United States presented by clear and convincing evidence that Defendants are a danger to the community because of the violence of the DTO they are connected to, their own threats of violence, including threats to potential witnesses or cooperators and their ability to continue to carry on the activities of the DTO while awaiting trial.  Defendants were shown to have carried out illicit activity, including discussing "hits" and making threats by use of a phone to third parties and can do so again through use of similar communication to third parties.  As a result, Defendants were detained.  [DE 24].

Defendants now move the Court to revoke the prior detention orders and release the Defendants on bond in light of the COVID-19 pandemic and the conditions of their current housing at Grayson County Detention Center.  [DE 49; DE 51].

## II.    DISCUSSION

Louis' motion asserts that the conditions of the Grayson County facility are so poor that he

is at a heightened risk of COVID-19. [DE  49].  Louis alleges he is

> in lock down in a 15 bed pod with 21 inmates. As a result, six inmates sleep on the
> floor. The inmates are still not provided hand sanitizer. All 21 of those men share
> one bathroom and are responsible for cleaning it themselves. It is physically
> impossible for them to practice appropriate social distancing. Inmates do not wear
> masks and while some guards do, they pull them down off of their noses and mouths
> when they converse with inmates. And, like the inmates, the guards are not issued
> gloves.

[DE 49 at 359].  He states that "all 122 members of the staff come and go from the jail every day.

Prisoners routinely arrive and depart the jail who have cases in Tennessee, Indiana, and the Eastern

and Western Districts of Kentucky.  None of these new inmates are tested when they arrive or are

assigned masks or gloves." [DE 49 at 359].  He also states that no one has been tested in his pod

and that the jail has no tests available on site.  [DE 49 at 358].

Louis states he has a 10% service connection disability related to an injury he sustained

when he served in the United States Army.  [DE 49 at 360].  He further asserts that he has been

treated for acute bronchitis that "may very well make him more likely to contract the illness and

more difficult for him to survive it."  [DE 49 at 360].  As a result of the poor conditions and his

prior treatment for acute bronchitis he asserts he is at high risk for contracting COVID-19 and

argues that the Bail Reform Act requires this Court release him to ensure his health and availability

for trial. [DE 49 at 359-60].

Jose alleges that that he is at a higher risk of contracting COVID-19 because the

"[c]onditions of pretrial confinement create the ideal environment for the transmission of

contagious disease."  [DE 51 at 369].  Jose also asserts that he

> has asthma and he must use inhalers in order to treat his condition . . . . However,
> Mr. Prieto is not being provided inhalers at the Grayson County Detention Center

4

thus being left alone to deal with his asthmatic condition. The CDC has set forth a list of medical conditions which render individuals at high risk for severe illness from COVID-19; one of which is moderate to severe Asthma.  As an asthmatic patient, Mr. Prieto is at high risk for severe illness if he contracts COVID-19 which currently is spreading in the Grayson County Detention Center.

[DE 51 at 372].

Both Defendants cite 18 U.S.C. §3142(i), stating that the Court may permit "temporary release" if "such release [is] necessary for preparation of the person's defense or for another compelling reason."  18 U.S.C. § 3142(i).

> 1.  "Compelling Reason" Analysis Under 18 U.S.C. §3142(i).

Under 18 USC §3142(i), after detention "The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."  18 U.S.C.A. § 3142.

As its plain language reveals, this provision applies in rare situations when release is "necessary" for preparation of a defendant's case or another "compelling reason." 18 U.S.C. § 3142(i).  "[T]he need to prepare a defense or other compelling reason under Section 3142(i) are not additional factors the Court may consider in evaluating *whether* to detain a defendant in the first place; those factors are in Section 3142(g) only."  *United States v. Villegas,* No. 2:19-CR-568-AB, 2020 WL 1649520, at *2 (C.D. Cal. Apr. 3, 2020).  Section 3142(i) presumes that a Court has already determined that the defendant must be detained pending trial, which is true as to Defendants, but permits a "subsequent order" for release to the "custody of a United States marshal or another appropriate person" for the two limited reasons of defense preparation or other "compelling reason."  *Id.*  Additionally, the release must be "temporary," no longer than needed to complete the "necessary" defense preparations or to resolve the other "compelling"

5

circumstances. *Id.* A defendant bears the burden of establishing circumstances warranting

temporary release under 18 U.S.C. § 3142(i). *See United States v. Clark*, No. 19-40068-01-HLT,

2020 WL 1446895, at \*2 (D. Kan. Mar. 25, 2020); *United States v. Buswell*, No. 11-CR-198-01,

2013 WL 210899, at \*5 (W.D. La. Jan. 18, 2013) (collecting cases).

Defendants do not argue that release is necessary for defense preparations, but only for the

health risks posed to them by COVID-19 which they assert is a "compelling reason" under 18

U.S.C. § 3142(i). [DE 49 at 359-60; DE 51 at 371-72]. Louis asserts that these risks are heightened

given the conditions at the Grayson County Detention Center, where it is impossible to practice

safe distancing and proper hygiene. [DE 49 at 358-59]. Jose argues the same and additionally

asserts that his asthma puts him is a higher risk category for contracting COVID-19 as well. [DE

51 at 372]. Neither Defendant argues any of the factors under 18 U.S.C. Section 3142(g).

There is limited authority for when temporary release is justified under 18 U.S.C. § 3142(i)

based on "another compelling reason," although a defendant's medical condition may present that

compelling reason under certain facts. *See United States v. Rebollo-Andino*, 312 Fed. App'x 346,

348 (1st Cir. 2009) (noting the defendant could seek temporary release under § 3142(i) for medical

reasons). Courts have typically granted relief under § 3142(i) only "sparingly to permit a

defendant's release where, for example, he is suffering from a terminal illness or serious injuries."

*United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at \*2 (E.D.N.Y. Mar. 20, 2020).

Neither Defendant has asserted a terminal illness or other serious injury.

2. The *Clark* Factors.

In *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895 (D. Kan. Mar. 25,

2020), the district court analyzed recent cases addressing whether defendants should be released

from custody or allowed bond conditions based solely on COVID-19 concerns. The *Clark* Court

conducted an in-depth study of cases about the pandemic, and the various manners in which courts have resolved these motions. The *Clark* Court determined that the inquiry into whether a defendant's individual circumstances warrant release during the COVID-19 pandemic is appropriately considered case-by-case under the "compelling reason" prong of 18 U.S.C. § 3142(i). In making that determination, the Court noted:

> The court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents. But, in that context, a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. Rather, the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary under § 3142(i). In making that determination, the undersigned will evaluate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."

*Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3. While there is no specified test in this Court or in the Sixth Circuit, the *Clark* factors adequately capture the concerns that every Court must weigh under the statutory framework in considering whether the defendant's assertions about COVID-19 represent a "compelling reason" for release.

### a. The Original Grounds For Defendants' Pretrial Detention.

As stated above, this Court conducted a lengthy *de novo* review of detention in this case reviewing recordings from the two detention hearings conducted in California, the Pretrial Services Reports prepared in California for both Defendants, the Orders of Release, the parties' briefing, and conducting an evidentiary hearing and oral argument on the motions. The Court found that there are no conditions or combination of conditions to reasonably assure the safety of the

community based on the clear and convincing evidence that Defendants are a danger to the community because of the violence of the DTO they are connected to, their own threats of violence, including threats to potential witnesses or cooperators and their ability to continue to carry on the activities of the DTO while awaiting trial.  [DE 24].  Defendants have carried out illicit activity, including discussing "hits" and making threats by use of a phone to third parties and can do so again through use of similar communication to third parties.

Nothing has changed in respect to any of the original reasons for the Defendants' detention and the motions present no new arguments or factual assertions to address any of the Court concerns.  The Defendants do not proffer any different information with a "material bearing" on the factors considered in the Bail Reform Act—the risk of non-appearance at court proceedings or of their danger to the community if released.  18 U.S.C. § 3142(f); DE 95 at 458.  So the same reasons given during the prior detention orders remain just as valid and conclusive.

*b.   The Specificity Of The Defendant's Stated COVID-19 Concerns*

The Bail Reform Act does not authorize pretrial release under generic health conditions that while serious, apply to every detainee in federal custody.  *See*, *e.g.*, *United States v. Penaloza*, 2020 U.S. Dist. LEXIS 56569, at *4 (D. Md. Mar. 31, 2020) ("[T]he mere presence of the [Covid-19] virus, even in the detention setting, does not automatically translate to the release of a person accused."); *United States of America v. Lee*, No. 19-CR-20112-03, 2020 WL 1540207, at *3 (E.D. Mich. Mar. 30, 2020) ("[T]he COVID-19 pandemic cannot be the sole basis for releasing a defendant from custody pending trial; the Court must still consider the Section 3142(g) factors.").

Here, Louis asserts that the health risks posed to him by the COVID-19 pandemic are heightened because of his prior treatment for acute bronchitis and the conditions at the Grayson County Detention Center, where he alleges it is impossible to practice safe distancing and proper

8

hygiene.  [DE 49 at 358-60].  Jose alleges the same concerns about the conditions at Grayson County and that his asthma places him in a higher risk category.  [DE 51 at 367].  Jose does not assert that he is having any uncontrolled issues with his asthma and in fact, the Court cannot find where Jose ever reported his asthma to the facility.  Defendants also does not provide any support for the assertion that they cannot practice safe hygiene or that Grayson County Detention Center lacks the resources necessary to engage in screening and testing of inmates, correctional staff, law enforcement officers, and other care and service providers who enter the facility.  [DE 51 at 367].

The Court notes the updates provided to it by the United States Marshals Service, as well as information set forth in online statements by various detention facilities used in this district that these facilities are taking appropriate precautions recommended by the Centers for Disease Control to prevent the spread of COVID-19.  The United States has proffered that the Grayson County Detention Center, where the Defendants are being housed, has implemented the following precautions:

1.  All employees and inmates are monitored for symptoms of respiratory infection;

2.  All new inmates are screened by medical personnel for signs of respiratory infection and appropriate infection prevention practices are implemented;

3.  Visits by non-essential personnel (programs, mentors, religious services, etc.) are suspended;

4.  Inmate visitation is suspended;

5.  Attorney/client meetings are being held by video conference or "through the glass" meetings;

6.  "Clean teams" have been designated and provided personal protective equipment and supplies to frequently disinfect high traffic areas;

7.  Hand sanitizer stations have been established and remain fully stocked; and

9

        8.   Individuals who may become symptomatic will be isolated.

[DE 56 at 409; DE 54 at 403].[1] Defendants make no argument to assert that these precautions are ineffective or any different from the precautions that a person or a person with asthma or other preexisting conditions would otherwise take to protect themselves against the spread of the virus.

      While there are a limited number of positive cases in Grayson County Detention Center, originally 32, all of those cases were in the quarantine unit (where individuals who are transported for court hearings, medical reasons or other transfers are housed before being introduced into the general population) and did not reach the general population where the Defendants are located. Contact tracing was used to identify individuals to be tested and, as noted to the Court, neither of these Defendants were identified as having contact with any infected inmate. Additionally, at this time, all but seven have recovered and only two required any type of hospitalization. This demonstrates the facility's appropriate response to the positive cases and proper use of the quarantine unit. As such the Defendants' concerns, while understandable, are speculative because they fail to demonstrate that the actions taken by the Grayson County Detention Center are not sufficient to protect the inmates and specifically someone with asthma. *Hamilton*, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (advanced age and medical conditions did not warrant temporary release due to COVID where the Bureau of Prisons is taking system-wide precautions to mitigate the possibility of infection within its facilities). In addition, it is speculative that Defendants would be more at risk inside the Grayson County detention Center than in the community. *Sanders*, No. 19-20037-01-DDC, 2020 WL 1528621, at *5 ("Mr. Sanders's release

---

[1] Defendants do not object to this proffer or offer any conflicting assertions in his briefing. *United States v. Sanders,* No. 19-20037-01-DDC, 2020 WL 1528621, at *5 (D. Kan. Mar. 31, 2020).

request does not explain how his release would mitigate his overall exposure to COVID-19. Indeed, Mr. Sanders relies on his speculative assumption that his risk of contracting COVID-19 is higher inside CoreCivic than if he is released. But that assumption is not necessarily accurate.").

> c. *The Extent To Which The Proposed Release Plan Is Tailored To Mitigate Or Exacerbate Other COVID-19 Risks To The Defendant.*

The Bail Reform Act allows for temporary release only if the court determines that such release is "necessary" for a compelling reason.  18 U.S.C. § 3142(i).  In the context of COVID-19, this means that the proposed temporary release plan should be tailored to mitigate the defendant's overall COVID-19 risks, not exacerbate them.  Defendants provide the Court no release plan other than requesting release to home detention  [DE 49 at 362; DE 51 at 372].  Jose states only that a "release to home detention with CPS monitoring both separates Mr. Prieto from the COVID-19 existing within the facility and reasonably protects the community from any danger posed by him." [DE 51 at 372].  Louis merely asks for bond without specifying conditions.  [DE 49 at 362]. Moreover, they do not specify that they are requesting "temporary" release, which is the only release called for under 18 U.S.C. § 3142(i).

Given the precautions taken by the Grayson County Detention Center as outlined above and without any specificity in Defendants' motions as to how they plan on better protecting themselves upon release, Defendants fail to demonstrate how release will mitigate the risks to them.  *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020)(failing to provide a release plan demonstrating mitigation of risks); *Sanders*, No. 19-20037-01-DDC, 2020 WL 1528621, at *5 ("Mr. Sanders's release request does not explain how his release would mitigate his overall exposure to COVID-19.  Indeed, Mr. Sanders relies on his speculative assumption that his risk of contracting COVID-19 is higher inside CoreCivic than if he is released. But that assumption is not necessarily accurate.").

d. *The Likelihood That The Defendant's Proposed Release Would Increase COVID-19 Risks To Others.*

In considering temporary release under § 3142(i) based on COVID-19, "it is also appropriate to consider the likelihood that the defendant's proposed release plan would increase COVID-19 risks to others, particularly if the defendant is likely to violate conditions of release." *Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *7. "A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody." *Id.* Supervising a non-compliant defendant out in the community will place pretrial services officers at heightened risk of contracting the virus. As there is no prior criminal history involved with these Defendants, this factor is neutral.

e. *Weighing the Clark Factors.*

This Court is not blind to the risks associated with the COVID-19 virus whether in the Grayson County Detention Center or any other location in this district. But Defendants have not established compelling reasons sufficient to persuade the court that temporary release is necessary. Critically, Defendants have failed to address the prior findings regarding dangerousness. *United States v. Blankenship*, No. 2:19-CR-237(2), 2020 WL 1557664, at *3 (S.D. Ohio Apr. 1, 2020). It remains that there are no conditions or combination of condition that will reasonably assure the safety of the community.

In addition, Defendants have not rebutted the proffer by the United States that the correctional staff at Grayson County Detention Center are implementing precautionary and monitoring practices sufficient to protect detainees from exposure to the COVID-19 virus. *United States v. Martin*, No. CR PWG-19-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020).

While the court is mindful of Defendant's concerns, the COVID-19 outbreak does not constitute a sufficiently compelling reason to justify release, even with a higher risk factor, where the safety of the community cannot be ensured, and the facility has taken appropriate measures. *Id.*; *Hamilton*, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *2; *United States v. Thomas*, No. CR 19-176, 2020 WL 1599339, at *1 (W.D. Pa. Mar. 31, 2020). Furthermore, they have not established any proposed release plan that would alleviate their overall COVID-19 risks. Given the record now before the Court and based upon the balance of factors described above, release is not appropriate under 18 U.S.C. §3142(i).

## CONCLUSION

For all the reasons above, **IT IS ORDERED** that Jose Prieto's Motion For Immediate Release Pursuant To 18 U.S.C. § 3142(I) Due To The Danger Of The Coronavirus Pandemic [DE 51] and Louis Prieto's Motion To Revoke Detention Order Pursuant To 18 U.S.C. §3142 (I) [DE 49] are **DENIED.**

Copies to:     Counsel of record
               Probation Office