UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                   Plaintiff

v.                                    Criminal Action No. 3:19-cr-142-RGJ

JOSE PRIETO, JR.                                          Defendant

* * * * *

## MEMORANDUM OPINION & ORDER

Defendant Jose Prieto, Jr. ("Defendant") moves this Court for compassionate release under 18 U.S.C. § 3582(c)(1)(A), and he asks the Court to appoint counsel.  [DE 99].  The United States responded.  [DE 103].  This matter is now ripe.  For the reasons below, the Court **DENIES** Defendant's Motion for compassionate release [DE 99].

## I.       BACKGROUND

On August 19, 2020, Defendant waived indictment and pursuant to a Rule 11(c)(1)(C) plea agreement, pled guilty to one count of conspiring to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and 846, and one count of conspiring to commit money laundering in violation of 21 U.S.C. § 841, 18 U.S.C. §§ 1956(h), (a)(1)(A)(i) and (a)(1)(B)(i).  [DE 60; DE 66].  On December 1, 2020, Defendant was sentenced to 97 months' imprisonment on the two counts to run concurrently, followed by 10 years supervised release.  [DE 91].

After requesting compassionate release, Defendant requested an opportunity to reply to the Government's response and the Court granted him 21 days, which have now passed.  [DE 105]. The Court notes that it also monitored Defendant's location status[1] and allowed additional time for

---

[1] https://www.bop.gov/inmateloc/.

1

a reply because of location changes.  The Court received a notice from Defendant on November 25, 2022, dated November 18, updating his address with the Court and noting that he had been housed at Yankton FPC since November 15.[2]  [DE 107].  As of the date of this order, over two weeks after the Court received that filing, the Court has received no further reply from Defendant.

## I.      ANALYSIS

### A. Appointment of Counsel

The Sixth Amendment secures the right of a criminal defendant who faces incarceration to be represented by counsel at all "critical stages" of the criminal process.  *United States v. Wade*, 388 U.S. 218, 224 (1967).  However, the constitutional right to assistance of counsel does not extend to motions for post-conviction relief.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Shedwick v. Warden N. Cent. Corr. Inst.*, No. 16-3203, 2016 WL 11005052 (6th Cir. Dec. 30, 2016) ("[T]here is no right to counsel in a post-conviction action.").  The decision of whether to appoint counsel for the purpose of seeking compassionate release is a decision within the sound discretion of the Court.  *See United States v. Inman*, No. 3:20-CR-00154, 2022 WL 304660, at *1 (M.D. Tenn. Feb. 1, 2022) (citing *United States v. Stephens*, No. 06-CR-20365, 2020 WL 3250226, at *2 (E.D. Mich. June 16, 2020)).  "In exercising discretion as to whether to appoint counsel, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court." *United States v. Woods*, No. 2:03-CR-069, 2020 WL 5805324, at *3 (E.D. Tenn. Sept. 28, 2020) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)).

Defendant fails to present any unique circumstances justifying appointment of counsel and fails to articulate why he is unable to present his request for compassionate release pro se.  A

---

[2] The Court received another notification from Defendant of a "new prison address, change of location" on December 5.  [DE 108].  This notice contained the same Yankton FPC location.  [*Id.*].

compassionate release request is not a particularly complex claim factually or legally.  *See Inman*, 2022 WL 304660, at *1 (citing *United States v. Drayton*, No. CR 10-20018-01-KHV, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020) (denying motion to appoint counsel related to motion for compassionate release and noting that compassionate release claims are not particularly complex factually or legally and that the defendant appeared able to adequately present his claim)).  Upon review, the Court finds that the issues involved in Defendant's request for compassionate release are not complex or beyond the capability of an ordinary *pro se* litigant and that Defendant has been able to appropriately navigate the court requirements for such a motion.

**B.  Exhaustion of Administrative Remedies.**

Before the First Step Act, PL 115-391, 132 Stat 5194 (Dec. 21, 2018), the court could not grant a motion for compassionate release unless the motion was filed by the director of the Bureau of Prisons ("BOP").  *See* 18 U.S.C. § 3582(c)(1)(A) (2017).  The First Step Act amended § 3582(c)(1)(A) to allow the court to grant a motion for compassionate release filed by the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . ." 18 U.S.C.A. § 3582(c)(1)(A); PL 115-391, 132 Stat 5194 § 603 (Dec. 21, 2018).

In *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020), the Sixth Circuit determined that the occurrence of one of the two events noted in the statute is a "mandatory condition" to granting relief.  If the government "properly invoke[s]" the condition and does not waive its requirement, the court must enforce it.  *Id.* at 834.  Further, the Sixth Circuit ruled that this court cannot find exceptions to the mandatory condition.  *Id.*  ("Nothing in § 3582(c)(1)(A) suggests the possibility of judge-made exceptions.").

3

"District courts across the country have grappled with the language of the First Step Act to determine precisely what a prisoner must do before he can successfully bring his own motion for compassionate release in federal court." *United States v. Littles,* No. 7:12-CR-9-KKC, 2020 WL 4282219, *2 (E.D. Ky July 27, 2020). If the warden fails to act on the defendant's request for a compassionate-release motion the law is clear that the defendant can bring his own motion in federal court after waiting 30 days from the date the warden received his request. It remains less clear when a warden denies a defendant's request to file a motion for compassionate release about whether a defendant must exhaust the administrative appeal process until a final decision is rendered. *Id.*

Courts have come to different decisions on these issues. *Id; see, e.g.*, *United States v. Blankenship*, No. CR 7:19-10-KKC, 2020 WL 6111959, at *1 (E.D. Ky. Oct. 16, 2020); *United States v. Smith*, 460 F. Supp. 3d 783, 797 (E.D. Ark. 2020); *United States v. Haney*, 454 F. Supp. 3d 316, 322 (S.D.N.Y., 2020). In *Alam*, however, the Sixth Circuit construes the statute as giving defendants two alternate pathways to federal court.

Under the first pathway, "prisoners who seek compassionate release have the *option* to take their claim to federal court within 30 days, no matter the appeals available to them." *Alam*, 960 F.3d at 834 (emphasis added); *see also United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020). The Sixth Circuit states that the statute "imposes a requirement on prisoners before they may move on their own behalf: They must 'fully exhaust[ ] all administrative rights' *or else* they must wait for 30 days after the warden's 'receipt of [their] request.'" *Alam*, 960 F.3d at 833 (emphasis added) (quoting 18 U.S.C. § 3582(c)(1)(A)).

Under the second pathway, "[i]f the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own

4

behalf.  To do that, he must 'fully exhaust[ ] all administrative rights to appeal' with the prison *or* wait 30 days after his first request to the prison."  *Alam*, 960 F.3d at 833–34 (emphasis added) (quoting 18 U.S.C. § 3582(c)(1)(A)).  The Sixth Circuit clarified that, for those prisoners who choose to "pursue administrative review," they need not complete it before coming to federal court. *Id.* at 836.  "[P]risoners have the option to go to federal court" if they pursue administrative review and it "comes up short (*or if 30 days pass*)."  *Id.* (emphasis added).

Defendant sought compassionate release from the Warden on July 26, 2022, which the Warden denied.  [DE 99-2 at 857-58].  Defendant did not file the current motion for compassionate release until August 18 and thus has properly exhausted as it has been more than 30 days since Defendant made his request to the Warden.  As a result, the Court considers Defendant's motion on the merits.

### C.  Sixth Circuit *Jones* Analysis.

A district court has limited authority to modify a sentence.  *United States v. Ruffin*, 978 F.3d 1000, 1003 (6th Cir. 2020).  "Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute."  *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013).  Section 3582(c)(1)(A) grants that authority in certain limited circumstances.  It provides, in part:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).  Subpart (ii) of this portion of the statute provides "a separate basis for compassionate release tied to the defendant's age and years in prison." *Ruffin*, 978 F.3d at 1003.

"Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory." *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020); *United States v. Biggs*, No. 21-3259, 2021 WL 4240782, at *1 (6th Cir. Sept. 17, 2021) (citing *United States v. Elias*, 984 F.3d 516, 520 (6th Cir. 2021)).  That said, district courts must "supply specific factual reasons for their compassionate release decisions." *Id.* at 1101-02.

The Sixth Circuit has held that the decision regarding whether to reduce a term of imprisonment pursuant to Section 3582(c)(1)(A) involves a three-step analysis. *Jones*, 980 F.3d 1098; *see also* 18 U.S.C. § 3582(c)(1)(A)(i); *Ruffin*, 978 F.3d at 1004.  First, a court must find whether "extraordinary and compelling" reasons warrant a sentence reduction or whether the defendant fulfills the requirements of §3582(c)(1)(A)(ii). *Jones*, 980 F.3d at n. 12.  Second, a court must find whether a reduction is consistent with applicable Sentencing Commission policy statements. *Id.*  Third, a court must consider any applicable Section 3553(a) factors.  Based on this inquiry the Court determines whether, in its discretion, the reduction authorized is warranted in whole or in part under the circumstances of the case. *Id.*  "[W]hen any of the three prerequisites listed in § 3582(c)(1)(A) is lacking," the district court may deny compassionate release motions on that basis alone. *United States v. Elias*, 984 F.3d at 519.

"Section 3582(c)(1)(A) does not define 'extraordinary and compelling reasons.'" *Ruffin*, 978 F.3d at 1004.  "In 28 U.S.C. § 994(t), Congress delegated to the Sentencing Commission the responsibility of describing what should be considered extraordinary and compelling reasons for sentencing reduction, including the criteria to be applied and a list of specific examples by

6

promulgating general policy statements regarding the sentencing modification provisions in § 3582(c)(1)(A)." *Jones*, 980 F.3d at 1108-09 (alterations adopted) (internal quotation marks omitted).  Section 1B1.13 of the United States Sentencing Commission Guidelines Manual contains the Sentencing Commission's policy statement on compassionate release under 18 U.S.C. § 3582(c)(1)(A).  *Jones*, 980 F.3d at 1103, 1109; U.S.S.G. § 1B1.13 ("Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)").  However, this section has not been updated since passage of the First Step Act in December 2018.  *Jones*, 980 F.3d at 1109. As a result, the Sixth Circuit held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Jones*, 980 F.3d at 1109.

"In determining 'extraordinary and compelling reasons,' district courts may ask: (a) whether 'the defendant is at high risk of having complications from COVID-19' and (b) whether 'the prison where the defendant is held has a severe COVID-19 outbreak.'" *Biggs*, 2021 WL 4240782, at *1 (citing *Elias*, 984 F.3d at 520)).  "But a district court need not follow this two-part analysis." *Id.* (citing *Elias* at 520 n.1).

The Sixth Circuit also held in *Jones* that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id.* at 1109.  Thus, U.S.S.G. § 1B1.13 currently is not an "applicable policy statement[ ] issued by the Sentencing Commission" in such cases.  18 U.S.C. § 3582(c)(1)(A); *Jones*, 980 F.3d at 1101, 1109.  So now, "where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry," at least until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act.  *Jones*, 980 F.3d at 1111.

As to consideration of the § 3553(a) factors, the Court must "consider such things as the characteristics of the defendant, the nature of the offense, and various penological goals, such as the need to promote respect for law and to protect the public." *Ruffin*, 978 F.3d at 1005; *Jones*, 980 F.3d 1115.

> Among the variety of items that courts have considered in this step are conditions at the place of incarceration, the defendant's health issues, whether the defendant is receiving medical treatment for his or her health issues, the defendant's behavior in prison, the type of offense(s) for which the defendant was convicted, whether the defendant had prior criminal convictions (and, if so, how many and the seriousness of such crimes), whether the defendant had prior juvenile convictions, whether the defendant previously complied with any presentence or post-incarceration conditions, the amount of the sentence that the defendant has served to date, whether the court varied downward from the guidelines range when imposing the sentence, whether the defendant has had a drug addiction, the defendant's successful participation in substance abuse programming or other rehabilitation efforts while incarcerated, the defendant's successful participation in educational or vocational training while incarcerated, and whether the defendant took responsibility for his or her actions.

*United States, v. Pooler*, No. 3:18-CR-00137, 2020 WL 7046964, at *5 (S.D. Ohio Dec. 1, 2020) (citing *Jones*, 980 F.3d 1098; *Ruffin*, 978 F.3d at 1008-09); *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (a court should consider "the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable").

The defendant bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See United States v. Karr*, No. 6:17-CR-25-REW, 2020 WL 774363, at *6 (E.D. Ky. Feb. 18, 2020).

### 1. *Medical Neglect As An Extraordinary And Compelling Justification for Compassionate Release*

Defendant first asserts his medical conditions as support for his compassionate release, arguing his conditions have been neglected.  [DE 99 at 842-43].  He states that he suffered a misdiagnosed and initially untreated hernia, and now suffers from an undiagnosed chronic

condition that could be life threatening.  [*Id.*].  But his hernia was treated, and Defendant has not been diagnosed with, or assert he has, any additionally sufficiently serious condition that would prevent him from caring from himself within his facility of confinement.  [DE 99 at 842-43]; *see* U.S.S.G. § 1B1.13 cmt. n.1 (conditions that constitute extraordinary and compelling medical conditions that warrant compassionate release include terminal illnesses or serious physical, medical, and mental conditions which prevent the defendant from providing self-care within a correctional facility); *and United States v. Profitt*, No. CR 5:19-032-DCR, 2021 WL 952280, at *2 (E.D. Ky. Mar. 12, 2021) (Defendant had "not described any conditions that are terminal or sufficiently serious such that they would prevent her from caring for herself within her facility of confinement.").  Furthermore, a motion for compassionate relief is not the appropriate avenue for a prisoner seeking medical care.  *See United States v. Rodriguez-Gonzales*, No. 3:08-CR-304-4, 2021 WL 5769160, at *3 (N.D. Ohio Nov. 3, 2021) ("Normally, a court considering a motion for compassionate release on the basis that a prisoner is receiving inadequate medical care should deny such motion.  This is so because where an institution fails to provide adequate medical care, as the defendant alleges, the proper avenue for relief is the route the Supreme Court laid out in *Estelle v. Gamble*, 429 U.S. 97 (1976).").  Thus, "medical neglect" is not extraordinary or compelling justification for compassionate release.

### 2. *COVID-19 As An Extraordinary And Compelling Justification For Compassionate Release.*

Defendant asserts that the conditions of his incarceration increase the likelihood of contracting COVID-19 because he is 58 years old, he has had previous substance abuse, severe allergies and asthma, ulcers, gallstones, loss of blood issues, hernia surgery, and a BMI greater than 30.  [DE 99 at 843-45].  Defendant attached some of his medical records.  [DE 99-2].

Defendant is housed at FPC Yankton.[3] Of the 347 total inmates at FPC Yankton, there are 0 inmates with the virus and 118 inmates that have recovered from the virus as of this order.[4] There are 0 staff with the virus and 22 who have recovered.[5] There is no uncontrolled outbreak. Further, at this time 84 staff and 458 inmates at FPC Yankton are fully vaccinated.[6] Defendant's medical records do not indicate whether he has received the COVID-19 vaccine. [DE 99-2].

The Sixth Circuit has held that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 2021 WL 4699249, at *3 (6th Cir. Oct. 8, 2021). The Sixth Circuit concurring with the Seventh Circuit reasoned that:

> After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated. To be sure, inmates in some respects face social distancing challenges distinct from those of the general public (although perhaps not entirely unlike students in dorm rooms, individuals in medical and assisted care facilities, and even residents of densely occupied apartment complexes). But to the extent prisons do offer some unique challenges, the vaccine now significantly reduces the risks associated with COVID-19. And at this intersection of law and science, we find wisdom in Judge Easterbrook's assessment that 'for people living in close quarters, vaccines offer relief far more effective than a judicial order.'

*Id.* (internal citation removed).

While Defendant may be at a greater risk because of his medical history, there is no indication that his condition or any other ailments are uncontrolled at this time. There is also no indication that he has had a difficult time receiving appropriate treatment for any chronic conditions, or that his conditions are not being managed. *United States v. Weidenhamer*, No. CR-

---

[3] https://www.bop.gov/inmateloc/ (last visited Dec. 8, 2022).
[4] https://www.bop.gov/locations/institutions/okl/(last visited Dec. 8, 2022).
https://www.bop.gov/coronavirus/ (last visited Dec. 8, 2022).
[5] *Id.*
[6] *Id.*

16-01072-001-PHX-ROS, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019) (compassionate release denied: "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.").

"Although the court does not minimize the general risk faced by prisoners and prison employees during the COVID-19 pandemic, Defendant's assertion of the extraordinary risk he faces is not supported by the factual record." *United States v. Oladimu*, 2020 WL 1866253, *2 (D. Mass. Apr. 14, 2020). Because Defendant's concerns about COVID-19 are essentially the same as the rest of the prison population, he is not entitled to compassionate release. *See, e.g.*, *United States v. Morrison*, No. 2:13-CR-098, 2021 WL 2637393, at *2 (E.D. Tenn. June 25, 2021) ("the COVID-19 pandemic cannot alone justify compassionate release"); *United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *United States v. King*, 522 F. Supp. 3d 249 (W.D. Ky. 2021) ("the mere existence of COVID-19 and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

Using the Sixth Circuit's standard of full discretion as stated in *Jones*, the Court finds that Defendant has not shown extraordinary or compelling medical reasons to alter his sentence. *Jones*, 980 F.3d at 1107-11.

### 3. Eligibility for Home Confinement Release Under the CARES Act As An Extraordinary and Compelling Justification For Compassionate Release

Defendant has attached documentation of his attempt to obtain CARES Act relief from the BOP, but the Court cannot grant home confinement. "[T]he CARES Act and the statute that

11

generally provides for prerelease home confinement, 18 U.S.C. § 3624(c)(2), do not authorize district courts to grant such relief." *United States v. Blankenship*, No. 7:15-011-DCR-1, 2020 WL 2309245, at *2 (E.D. Ky. May 8, 2020).  Instead, "[t]he Bureau of Prisons holds the sole authority to grant home confinement requests."  *Id.* (citing *United States v. McCann*, No. 5: 13-52-KKC, 2020 WL 1901089, at *3 (E.D. Ky. Apr. 17, 2020)).  Therefore, insofar as Defendant requests relief under the CARES Act, the Court will deny the motion.

### 4. Defendant's Rehabilitation As An Extraordinary and Compelling Justification For Compassionate Release

Defendant also asserts that his "record of extraordinary post-conviction rehabilitation efforts" in completing "approximately 28+ programs" as a justification for release.  [DE 99 at 847-48].  While the court commends Defendant's efforts and it is highly commendable, unfortunately it is not by itself an extraordinary and compelling reason to grant early release.  *See United States v. Ruffin*, 978 F.3d at 1009 ("rehabilitation alone does not provide a proper basis for relief."); *United States v. Washington*, 2019 WL 6220984 (E.D. Ky. Nov. 21, 2019) (the defendant's claim that he "has an ideal prison record and is the prototype of a successfully rehabilitated individual" does not present an extraordinary circumstance).  The Court encourages Defendant to continue on this path as it will serve him well at the time of his release.

Additionally, the Court cannot properly consider this type of motion because "[a] post-conviction motion attacking the execution of the sentence under § 2241 must be brought in the district in which the petitioner is incarcerated."  *United States v. Richards*, No. 3:05-CR-00185, 2019 WL 2008572, at *3 (M.D. Tenn. May 7, 2019) (*citing In re Hanserd*, 123 F.3d 922, 925 n.2 (6th Cir. 1997); and *Wright v. U.S. Bd. of Parole*, 557 F.2d 74, 77 (6th Cir. 1977)).  Defendant is incarcerated at FPC Yankton, in Yankton, SD,[7] which is in the District of South Dakota.  Thus,

---

[7] *See* https://www.bop.gov/inmateloc/ (last visited December 8, 2022).

Defendant's motion, properly interpreted as a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241, cannot be properly heard by this Court.

Moreover, the authority to calculate and award good-time credits rests with the BOP. *United States v. Powell*, No. 5:11-CR-75-JMH-1, 2019 WL 1521972 at *2 (E.D. Ky. Apr. 8, 2019). "When sentencing criminal defendants, federal district courts do not determine the appropriate credit for time spent in official detention." *Id.* (citing *United States v. Wilson*, 503 U.S. 329, 333 (1992)). The United States Attorney General, acting through the BOP, administers a federal defendant's sentence and initially has the exclusive authority to determine when a federal sentence commences and to compute sentence credit awards after sentencing. 18 U.S.C. §§ 3585(a), 3621(b); *See* 28 C.F.R. § 0.96 ("The Director of the Bureau of Prisons is authorized to exercise or perform the authority, functions, or duties conferred or imposed upon the Attorney General by any law relating to the commitment, control, or treatment of persons . . . charged with or convicted of offenses against the United States . . ."); *Wilson*, 503 U.S. at 335. 18 U.S.C. § 3624 clearly states that it is the BOP, not the district court, that determines whether a federal prisoner should receive good time credit. As a result, this Court cannot grant the relief Defendant seeks.

### 5.   *Sentencing Objectives In 18 U.S.C. § 3553(a).*

This Court must also consider "all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114. A court need not "specifically articulat[e]" every single Section 3553(a) factor in its analysis. *Id.* Instead, the record "as a whole" must confirm that the pertinent factors were considered by the court. *Id.* For a reviewing court, the record as a whole will constitute both the original sentencing proceeding and the compassionate release decision. *Id.* at 1114.

As the sentencing court, this Court has reviewed the record and the 18 U.S.C. § 3553(a) factors at length.  The § 3553(a) factors counsel against compassionate release.  The "nature and circumstances" of Defendant's crime weigh against relief.  18 U.S.C. § 3553(a)(1).  Defendant's crime involved approximately 10 kilograms of methamphetamine.  [DE 78 at 723].  His crime also involved distributing large amounts of drugs and laundering drug money for a violent drug trafficking organization he was connected to.  [*Id.* at 717; *see also* DE 28 at 258-60].  The Court ultimately sentenced Defendant to a significant sentence of 97 months' imprisonment on the two counts to run concurrently, followed by 10 years supervised release.  [DE 91].

After reviewing the record again, the sentence adequately reflected the seriousness of the offenses, promoted respect for the law, provided just punishment, afforded adequate deterrence of future criminal conduct, and protected the public from future crimes of the defendant.  *See* 18 U.S.C. § 3553(a)(2)(A)-(C).  The Court's analysis on these factors remains unchanged from that at sentencing.  This Court concludes that Defendant's crimes are of serious concern to the community and less than full service of his sentence does not achieve the 18 U.S.C. § 3553(a)(2)(A)-(C) factors.  The Court therefore finds that the retribution, deterrence, incapacitation, and rehabilitation interests served by the original sentence counsel against early release in this case.

## II.   CONCLUSION

Because Defendant has failed to satisfy his burden for compassionate release for the reasons stated, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that Defendant's Motion for Compassionate Release [DE 99] is **DENIED.**

Rebecca Grady Jennings, District Judge
United States District Court

December 14, 2022

Cc:    Defendant, pro se

Counsel of record

15